Totten, J.
delivered the opinion of the court.
The property involved in these suits was derived from two distinct sources; hut all the parties interested in it are before the court, either in the one suit or the other; both of which have been heard together in the court below and in this court. Indeed, the interests of the parties, though derived originally from different sources, *589 are so blended and connected, that the course pursued of hearing these suits as one suit, was probably the most convenient. We are not therefore, called upon to raise or regard questions of technical pleadings, but shall treat the suits as they have been treated by the parties, as a suit in which their conflicting claims to the property in question, may be settled, no matter from what source derived.
The material facts, so far as they need be here stated, are these: In 1832, John G. Deadriek died intestate. He had married Eliza'G. Dunn, an only child of David Dunn. The issue of this marriage were Michael, Wm, Pitt, Isaac N., Mary E. and Don D., that is, there were five children, all of whom and their mother, said Eliza G., survived the said John G. Deadriek. The children and mother received a considerable estate in slaves, &c., as distributees of said intestate. This property remained in common until after the death of David Dunn, who died in February, 1837. He had been the administrator of the estate of his son-in-law, and after his death the estate, thus derived, was divided amongst the mother and her children, only so far as to assign to the mother her portion, leaving the children’s portion undivided. David Dunn died testate, and appointed Dudly Dunn and Littleton Henderson executors of his will. The will was proved and they become executors thereof in April, 1837.
The following are extracts from the will, to wit: “It is my will that my beloved wife, Sarah Dunn, have and use for her benefit during her natural life time, three hundred and twenty-five acres of land, to be taken off the west end of the land I now live on, designated by a line running due south from a point on the northern *590 line, to include the above three hundred and twenty-five acres of land, also to have the use of my negro man, Nelson, during her natural life.”
After further personal bequests to his wife, the testator’s will proceeds as follows: “It is my will that my daughter, Eliza Deadrick, have and possess, during her natural life time, all the balance of my estate, both real and personal, except such parts as may be hereafter otherwise disposed of. At her death it is my will that the property be equally divided among all her children then living, as well all her present children as those she may have in case of after marriage or marriages.” And further, “It is my desire that each of my grandchildren have two hundred dollars as they arrive at the age of twenty years or marry, to be taken from the profits of my estate, or otherwise to be paid to them by my daughter, Eliza G. Deadrick.” The only grand-children of the said testator were the said children of his daughter, Eliza G. Deadrick.
In the above devise to Eliza G. and her children, real and personal estate was included, that is to say, about one thousand acres of land, partly improved, some thirty or more slaves of various ages and value; some three thousand dollars in cash, and other personal effects. The said Eliza G. Deadrick was placed in possession of her said land and negroes, under the will, by the executors, about December, 1847, and after that, she received the money, but it is not certain at what time; it was paid to her at different times.
Thus the said Eliza G. Deadrick was now in possession, as tenant for life, of all said property derived from her father’s will; and as owner in fee of the negro slaves *591 and effects derived, as distributee, from her deceased husband.
After this, that is, November 20, 1839, the said Eliza G. intermarried with the defendant, David Armour; but before said marriage and with said Armour’s consent, she made and executed a deed of marriage settlement. By this deed, the said Eliza G. Deadrick conveyed to Dudly Dunn all the right, title and interest which she then had in and to all her property of every description, both real and personal, consisting of lands, negroes, horses, bank stock, &c.
“To have and to hold the aforesaid property unto him, the said Dudly Dunn, and his - forever, upon trust nevertheless, and for the following uses and trusts and none other, that is to say, whereas, there is at this time, a contract of marriage existing between the said Eliza G. Deadrick and David Armour, and in the event of said marriage taking place, the said David Armour desires, that said Eliza G. Deadrick secure herself in the full and proper use and enjoyment of the said property. It is therefore understood and agreed by and among said parties to the aforesaid bill of sale, that the said Eliza G. Deadrick is to have, irse and enjoy the possession, management and control of the aforesaid property, and by and with the consent of said Dudly Dunn, may sell, use and dispose of any or all of the aforesaid property, or her interest therein, or bank stock as she may think fit; the property aforesaid or interest therein, being in no wise subject to be used or employed for the purpose of paying or discharging any debt or debts which the said David Armour may have heretofore or may hereafter create; nor in anywise to be subject to his management or control. It is further *592 understood and agreed by said parties, that upon the event of the marriage taking place as aforesaid, and upon the death of said Eliza G. Deadrick, provided she dies before the said David Armour, that then and in that case, the said David Armour is to be entitled to all and singular the right, title, claim and interest which the said Eliza G. Deadrick had in and to the aforesaid property; and he is to have and enjoy the same for and during the term of his natural life and no longer. And upon the death of the said Eliza G. Deadrick and the said David Armour or the survivor of them, that then and in that case, all the aforesaid right, title, claim and interest, so conveyed as aforesaid in and to the aforesaid property and estate, shall descend to and be vested, absolutely vested, in the children which the said Eliza G. Deadrick may have by the said David Armour, by the marriage aforesaid,” &c., and if no such children, remainder to her then present children.
After the marriage, the said David Armour went into possession and control of the said property. Sarah D. Armour, an offspring of this marriage, was born on the 6th August, 1840, and died, intestate of course, on the 8th September, 1842. The said Don D. Deadrick of the former marriage, died July 16, 1841, intestate and without issue. Janett Armour of this last marriage was born in February, 1842, and Dudly D. Armour of the same marriage was born in October, 1845. The mother of these children, the said Eliza G., died intestate on the 2d November, 1845, and, within an hour after her death, her infant son, the said Dudly D. also died. Whether the mother or child survived has been much debated, and there is a great amount of proof on the subject; we have carefully analysed it and have no *593 doubt or hesitation as to the correctness of the conclusion above stated.
At and after the death of said Eliza G., the said David Armour continued in possession of the property, both real and personal, before mentioned. During the marriage he had received eight hundred dollars, the price of the slave Nelson, who had been sold by the tenant for life; and during the marriage said Armour, with the proceeds of his wife’s general property aforesaid, purchased the slave, Diana, and the fifty acres of land named in the pleadings.
Michael Deadrick is the administrator of his mother, the said Eliza G., and of his brother, the said Don D., and the defendant, David Armour, is the administrator of his two deceased children, the said Sarah D. and Dudly D. The object of the suit is, that the children of both marriages shall recover from David. Armour all the rights and interests which belong to them in the premises.
The first enquiry is, what is the proper construction of the deed of marriage settlement?
It is contended by complainants that its effect is to give a fee simple interest to the wife, and, consequently, that the remainders are void. Because, as it is insisted, there is given to her a power of disposition over the property inconsistent with the idea of a gift in remainder; and numerous authorities are cited to sustain this position. See Smith T. vs. Bell and Wife, M. & Yer. R. 302; David vs. Bradgender, 2 Yer. R. 557; Davis vs. Richardson, 10 Yer. R. 290; Jackson vs. Bull, J. R. 20; Jackson vs. Robins, 16 J. R. 588; Bradford vs. Street, 16 Ves. R.
These cases fully sustain the position, and it may be considered a settled rule, that where an estate is given *594 to a person generally or indefinitely, with an unrestricted power of disposition, it carries a fee. So a gift for life, with unlimited and unrestricted power of disposition, carries the fee. A limitation to the separate use of a married woman, either indefinitely with a general power of appointment superadded, or else for life only with a similar power, in either instance she takes the entire property in the thing limited. Clancy on H. & W. 296.
But the converse of this proposition is equally true. Where an estate is given to a person generally or for life with a limited and special power only, of disposition or appointment, and in case of failure thereof then remainder over, there is nothing inconsistent or repugnant in the limitation. The estate expressed is that which passes to the first taker; it is not enlarged by implication or construction, and on failure to execute the power or make the appointment in the special manner stated in the words of limitation which confer it, the estate or interest in remainder will take effect. See Reed vs. Shergold, 10 Ves. R. 377; Bradly vs. Westcott, 13 Ves. R. 445; Anderson vs. Dawson, 15 Ves. R. 538; Jackson vs. Robins, 16 J. R. 588; Clancy on H. & W. 304.
In Reed vs. Shergold, the Lord Chancellor says, “It is well settled that where there is an express limitation for life, with a power to dispose by will, the interest is equivalent only to an estate for life, and the power is to be executed, prima facie at least, by will. If the party dies, the interest ceases with the life; and no one can take by transmission of interest from that person, though he might take by the power, if executed,” 10 Ves. 379.
The principle of the case of Anderson vs. Dawson is thus stated: If there be a limitation to a feme covert for her separate use for life, and after her death for her *595 intended husband for life, with a power to her to appoint by will, and in default of appointment, then after the death of her husband, to her next of kin, this gives only an estate for life, with a power to appoint by will. 15 Ves. R. 534; Clancy 305.
These cases illustrate the effects of a limited or restricted power of appointment; the power is restricted to a given mode, that is, by will. The estate does not pass by the power of disposition, but only by the execution of the power. It is necessary to the valid execution of a power, that the mode or circumstances prescribed in the deed or will shall be strictly pursued; and, therefore, if it be required to be executed by writing, a parol disposition will be invalid; if by deed, a disposition by will is invalid;, if by the consent of particular persons, a disposition without such consent is void. Hawkins vs. Kemp, 3 East 410; 1 Sug. on Powers 266.
“Where (says Mr. Sugden) the consent of any person is-required to the execution of the power, that, like every other condition, must be strictly complied with. And if the person whose consent is necessary, die before the execution of the power, and without having assented, the power is gone, although his death was the act of God. So where the consent of several persons is required, the death of one of them destroys the power; for the consent of the survivors will not satisfy the words of the power.” 2 Sug. on Powers 334 and 141, and cases cited.
Where the consent of any person is required, it is evident that the principal object is, to protect the person to whom the power is given, from a hasty and unadvised disposition of the property. And where trustees have a discretionary power to consent or not, a court of equity has no power to control or eflforce them. 1 Sug. on *596 Powers 342; Brereton vs. Brereton, 2 Ves. 87. See also, Morgan vs. Elam, 4 Yer. R. 375; and Marshall vs. Stevens, 8 Hum. R.
' Now, in the deed before us, it is very evident that the intention was that said Eliza G. should have the sole and separate use of the property, as against her intended husband; and by and with the consent of said Dudly Dunn, the trustee, power is given to her to sell and dispose of said property, or her interest therein, as she might think fit.
The intention was to secure the said Eliza by deed, whilst she had the power to make a deed, against the power and influence that her husband might have over her after marriage, and to interpose for her protection the sound discretion and prudence of a trustee, to be exercised against any rash and ill-advised disposition of her property. This was the manifest intention of the deed; and it is very evident, from the principles before stated, that Eliza G. had no power of appointment or disposition over the property without the consent of her trustee, and that it would not have been competent even for a court of equity to have exercised any control over his discretion.
The said Eliza had not an unlimited power of appointment or disposition over the property in question, but only a restricted and qualified power; and it follows, therefore, that she did not take the entire property, or an estate in fee, but only a life estate.
The proper construction of the deed is, that the property named in it be held in trust for tho sole and separate use of the wife for life, with power to sell and dispose of the same to the extent of her original interest in it, by and with the» consent of the trustee, but not *597 otherwise; remainder to her husband, said David Armour, if he survived her, to have the use and enjoyment of the same during his life and no longer; and at the death of the survivor of said Eliza and David Armour, the entire property aforesaid is given in fee to the children of the marriage of said Eliza and David Armour.
2. The next question to be noticed relates to the construction of a clause in David Dunn’s will. He gives to his wife, Sarah Dunn, as before recited, three hundred and twenty-five acres of land and the negro slave, Nelson, “during her natural life.” He then gives to his daughter, Eliza G. Deadriek, during her natural life, all the balance of his estate both real and personal, and at her death the same to be equally divided amongst her children, that is, the children she then had and such as she might have by any future marriage. It is not to be presumed that the testator intended to die intestate as to any portion of his estate; and as the words of the will do in fact include the property in question, we are of opinion that the right to the three hundred and twenty-five acres of land and the slave, Nelson, vested in said Sarah Dunn for life, remainder to said Eliza G. for life, and remainder to her children in fee.
3. Don D. Deadriek died July 15, 1841, intestate and without issue, seized and possessed of real and personal estate. His brothers of the whole blood then living were Michael, Wm. Pitt, and Isaac N. Deadriek; his sisters were Mary E. Deadriek, of the whole blood, and Sarah D. Armour, of the half blood on the part of the mother. His mother, the said Eliza G. Armour, was also living. The estate of said' intestate, Don D, so far as need be here noticed, was derived from his father John G. Dead-rick, deceased. Upon this state of facts, w^ are of opinion *598 that the mother, brothers, and sisters, including the one of half blood, take in equal shares, as distributees, the personal estate of Don D. Deadriek, the said intestate, that is, one-sixth each, there being six of said distribu-tees, and that David Armour, as husband, was entitled to his wife’s said interest. But as to his real estate, it descended to his brothers and sister of the whole blood. Sarah D. Armour, his maternal half sister, had no inheritable blood to the land in question.
4. Sarah D. Armour died 8th September, 1842, aged about two years, and of course intestate. Her father, David Armour, her administrator, is also her sole dis-tributee, and entitled to whatever of personal estate belonged to her at her death. The only personal estate, so far as appears to us, of which she died possessed, was her distributive share of the estate of her half brother, Don D. Deadriek, deceased.
5. On the 14th April, 1842, David Armour was duly declared a voluntary bankrupt by decree of the circuit court of the United States at Jackson, in pursuance of the act of Congress, passed 19th August, 1841, to establish a uniform system of bankruptcy, áse., and at October term, 1842, of said court, said Armour was by decree and certificate fully discharged as a bankrupt. The interest of David Armour, in right of his wife, in and to a distributive share, one-sixth, of the estate of Don D. Deadriek, deceased, was not surrendered as part of his assets in said proceedings in bankruptcy. This interest was at the time undivided and held in possession of Samuel R. Brown, as guardian for the surviving children of John G. Deadriek, in common with the other property.
*599 Now, at the time when David Armour was declared a bankrupt, his entire estate in possession or action, was divested out of him and vested by act of law in the assignee in bankruptcy, in as full and ample manner as if he had executed a deed of assignment for the same. The assignee had a right to sue for and recover the distributive share in question as part of the assets of the bankrupt, for the benefit of his creditors. The right of the bankrupt to sue for and recover this interest ceased at the date of said assignment. No right remained or remains in him to demand it by suit or otherwise. As the assignee did not sue for it within the two years prescribed by the act of Congress, it is considered as abandoned by him; but his abandonment does not confer any right on the bankrupt to sue for and recover the property. He is repelled and estopped by the assignment. But the rights and interests of the bankrupt are to be regarded as fixed at the date of the assignment, that is, at the time that he was declared a bankrupt, and not at the time he obtained his certificate.
It follows, therefore, that David Armour, in right of his wife, has no interest remaining in the estate of Don D. Deadi'ick, it having been, in legal effect, transferred to his assignee in bankruptcy. But his interest in the estate of his daughter, Sarah D., 'who died after the assignment, is not affected thereby.
6. The defendant, David Armour, received the eight hundred dollars, the value of the slave, Nelson. After the death of Sarah Dunn, Eliza G. Armour was entitled to the slave during her life, remainder to her children, as before stated. The children of said Eliza living at her death are, therefore, entitled to the eight hundred dollars, with interest thereon from the death of said Eliza.G. *600 Armour; and for this said David Armour is liable to account.
7. The grand-children of David Dunn, that is, the children of Eliza G., of her first marriage, are entitled under his will to a legacy of two hundred dollars each; and we hold these legacies to be a charge on the profits of the life estate given under said will to their mother, the said Eliza G. And for the payment of these legacies, the fifty acres of land and the slave, Diana, purchased by said Armour with the profits of the estate during the life of his wife, will be held liable and chargeable.
8. The defendant, David Armour, is liable, as husband, for any waste done or suffered, after his said marriage, to said estate, in which his said wife was interested as tenant for life. And the fund of some three thousand dollars, paid by David Dunn’s executors to her, is to be held and considered as part of the estate, in which said Eliza G. was interested only as tenant for life. If this fund or any part of it came to the possession of said David Armour after his marriage, he is liable to account for it as husband.
9. In further construing the will of David Dunn, it will be observed that he gives all his estate, both real and personal, not otherwise disposed of, to his daughter, said Eliza G., for life; and “at her death, the said property to be equally divided among all her children, then living;” as well the children she then had as those she might have of a future mai’riage. The words “then living,” or living at her death, indicate distinctly the children entitled. The children who died before the mother have no interest in the remainder, but it will be “equally divided among all her children” living at her death *601 Her children living at her death are the following, to wit, Michael, Wm. Pitt, Isaac N., and Mary E. Deadriek, of the first marriage, and Janett and Dudly D. Armour, of the last marriage.
But as Dudly D. Armour died immediately after his mother, as before stated, his entire interest in said real estate, taken under the will oí his grand-father, David Dunn, descended to his brothers and sisters of the whole and half blood, above named; and his entire interest in the personal estate, derived from the same source, will go to his father, David Armour, as sole distributee.
The remaining rights and liabilities of the parties to this suit, resting mainly in account, are sufficiently apparent, and need not be stated in this opinion.
The decree of the chancellor will be reversed, and decree here entered in conformity to this opinion; in which decree appropriate directions will be given for an account against said David Armour for waste and diminution, if any, done or suffered after his marriage with said Eliza G„ and for hire of the slaves, use of the land, &e. He will be allowed for any permanent improvements on the land, not exceeding the value' of its rents. These directions have relation to the property derived under David Dunn’s will.