**James Lee WARPOOL, Jr., Appellant,**

v.

**Ida Mae Warpool FLOYD et al., Appellees.**

Supreme Court of Tennessee.

March 24, 1975.

Rehearing Denied June 9, 1975.

Branstetter, Moody & Kilgore, Carrol D. Kilgore, Nashville, for appellant.

G. Howard Doty, J. F. Doty, Nashville, for appellees.

## OPINION

HARBISON, Justice.

This case presents for decision the issue of whether children of half-brothers and sisters of an intestate take equal shares of his personal property with children of brothers and sisters of the whole blood. The chancellor held that they are entitled to equal shares, and the administrator has appealed here, seeking appropriate instructions as to the distribution of intestate personal property.

The decedent had one full brother and sister, both of whom predeceased him. The sister died without issue, but the brother left one child surviving. He is the administrator as well as the full nephew by blood of the decedent.

Decedent, who never married, was predeceased by both parents. His father, however, by a previous marriage had ten children, all of whom had predeceased the decedent. Eight of these, however, left surviving children, representatives of whom were named as defendants in the court below. There are some twenty-eight of these nephews and nieces of the half blood.

Under the law of intestate distribution in this state, there is no representation among collateral kindred, after the children

of brothers and sisters. T.C.A. § 31–202. Children of brothers and sisters, however, do take by representation, and it has been held that they take the intestate's personal property per stirpes, rather than per capita. *Housley v. Laster,* 176 Tenn. 174, 140 S.W.2d 146 (1940).

The statutes governing distribution of intestate personal property give priority to the surviving spouse and/or children of a decedent. Where there are no persons in these categories, however, the parents are preferred. The statutes then provide as follows:

"If no father or mother, to brothers and sisters, or the children of such brothers and sisters representing them, equally." T.C.A. § 31–201(5).

The statutes provide that if there are neither brothers, sisters, nieces nor nephews, then the personal estate is distributed "to every of the next of kin of the intestate who are in equal degree, equally." T.C.A. § 31–201(6).

In the case of *Kyle v. Moore,* 35 Tenn. 183 (1855), this Court expressly held that brothers and sisters of half blood shared equally in intestate personal property with brothers and sisters of the whole blood.

The Court noted that under the statutes then in effect, which were derived from earlier North Carolina statutes, where there were no children, distribution was to be made "to the next of kindred, in equal degree, of or unto the intestate, and their legal representatives, and in no other manner whatsoever."

The Court noted that in the computation of the degrees of kinship, there was no distinction between the half blood and the whole blood. The Court said:

"There is no law giving any preference to the half blood on the side of the transmitting ancestor, to the exclusion of the other line, in the distribution of personalty." 35 Tenn. at 185.

The Court in that case took note of express provisions in the statutes governing the descent of real property, which had altered the feudal policy of earlier English law, excluding persons of the half blood entirely. Statutes in effect at the time of the decision of the *Kyle* case, and still in effect today, do make certain distinctions between acquired and inherited realty, insofar as inheritance by half-brothers or half-sisters are concerned. T.C.A. § 31–101(2) and (3).

These "ancestral property" provisions were not part of the law of distribution of personal property when the *Kyle* case was decided, nor have they since been included therein.

Prior to the decision of the *Kyle* case, and consistent with it, the Court had held in the case of *Deadrick v. Armour,* 29 Tenn. 588 (1850) that brothers and sisters of the whole blood and half blood shared equally in intestate personal property.

The *Kyle* case has not been overruled or modified by any subsequent decision of this Court, and appellant concedes that it would be controlling here except for certain changes in the statutes of distribution which occurred in the revision and codification of the state law, resulting in the Code of 1858. For the first time, in that code, there were included provisions for inheritance by brothers and sisters and their children, if the decedent did not leave a surviving spouse, child or parent.

It is insisted that because the words "brothers and sisters" were used in the Code of 1858, without qualification and without reference to relatives of the half blood, the Legislature intended to prefer brothers and sisters of the whole blood to those of the half blood.

This Court is unable to find such a legislative intent in the Code of 1858. It is true that the "ancestral property" statutes governing real estate were then in force, and that they contained explicit reference to

half-brothers and half-sisters. The argument before us is that if the legislature had intended for siblings of the half blood to share fully with those of the whole blood, the legislature would have so provided.

It is equally plausible to assume, however, that if the legislature had intended to exclude half-brothers and half-sisters or to put them in a less-preferred category than full siblings, it could easily have so provided. Since it did not do so, it is the opinion of the Court that the legislature did not so intend, and that the holdings in the *Kyle* and *Deadrick* cases, *supra,* were not intended to be modified.

In the case of *Housley v. Laster,* 176 Tenn. 174, 140 S.W.2d 146 (1940), this Court said:

"Distribution of personalty was controlled in this State at an early date by chapter 3 of the North Carolina Acts of 1766; later by section 2429 of the Code of 1858; and now by section 8389 of the Code of 1932. While these several statutes vary in phraseology, all provide that children of brothers and sisters, nephews and nieces of intestate, take the intestate's personalty by representation, that is, *per stirpes.*" 176 Tenn. at 176, 140 S.W.2d at 146.

The Court cited cases decided both before and after the Code of 1858, and did not find in that code an intention on the part of the legislature to change prior law with regard to the method of inheritance by nieces and nephews.

■ We are of the opinion that the decision of the chancellor is correct and is in accord with what has been the general understanding of the Bench and Bar of this state for over one hundred years. See 2 Phillips' Pritchard, *Law of Wills and Administration of Estates,* § 773 (3rd ed. 1955).

While authorities from other states are not particularly helpful in matters of local law such as this, the courts generally have not looked with favor upon excluding relatives of the half blood in the absence of an express statutory provision. See 23 Am. Jur.2d, *Descent and Distribution* § 47; 26A C.J.S., *Descent and Distribution* § 36. The proposed *Uniform Probate Code* § 2–107 provides:

"Relatives of the half blood inherit the same share they would inherit if they were of the whole blood."

■ Finding no legislative history which would lead us to believe that the General Assembly intended to prefer siblings of the whole blood over those of the half blood, we hold that half-brothers and half-sisters share equally with full brothers and sisters in the distribution of intestate personalty, and that their children, taking by representation, take equally with the children of full brothers and sisters.

The decree of the chancellor is affirmed at the cost of appellants.

FONES, C. J., and COOPER, BROCK and HENRY, JJ., concur.